EMIL STEIN, PLAINTIFF-APPELLANT, v. ELIZABETH TRUST COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLEE.

Argued May 3, 1938—Decided September 20, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the plaintiff-appellant, *Joseph E. Epstein.*

For the defendant-appellee, *Louis C. Lehmann, Jr.*

BODINE, J. The appeal is from a judgment entered in Union County Court of Common Pleas striking a complaint. The plaintiff sought to recover the value of certain certificates of stock pledged with the defendant bank in July of 1931 to secure a loan. The loan has since been paid and the note evidencing the same has been returned to the maker. The note recited that the maker had deposited these certificates with the bank "as collateral security for the payment of the note, and any note or notes given in extension or renewal thereof, and *for the payment of any other liability or liabilities of the undersigned to the said bank due or to become due,* whether now existing, or hereafter arising, whether incurred directly or indirectly by the undersigned to the said bank, including as promissory *notes,* bills of exchange, and other evidence of indebtedness, made, endorsed or accepted by the undersigned and purchased or owned by said bank."

The answering pleading attempts to justify the holding of the securities pledged because it is said that they were entrusted to the bank, not only by way of security for the note paid, but also to secure the payment of any other liability of the maker, whether then existing or thereafter arising, whether incurred directly or indirectly.

It appeared that in December of 1931, the plaintiff guaranteed advances to his brother, William B. Stein, in a sum not exceeding $10,000, and also agreed to purchase for a price certain fifty shares of Broad and Central Realty Company stock held as security for a loan to the brother made by the defendant bank. The William B. Stein note has not been paid, and plaintiff has not performed his agreement to purchase the stock in the realty company.

"It is the duty of the bank upon repayment of a loan to surrender the securities, for, when the principal indebtedness has been paid or tender made, the collateral, not having been availed of, is discharged. The payment of a note to the bank,

secured by a collateral note, discharges the pledge of the latter note, and requires the bank to surrender it to the maker of the secured note as the owner. * * * But notes pledged for a particular loan and also for *all other liabilities* can be held as security for a time certificate issued by the borrowing bank and endorsed to the lending bank." 6 *Michie on Banks and Banking* 189, 190.

Although collateral notes, the language of which may be ambiguous are most strictly construed against the bank preparing them, there is no ambiguity in the note signed by the plaintiff. No more general language can be conceived of to create a pledge as security for all future obligations, whether directly or indirectly incurred.

The written guaranty given, when complainant's brother applied for a line of credit, is unambiguous. Nor is there any difficulty with the binding force on acceptance of the offer to purchase the stock of the Broad and Central Realty Company held by the bank as security for the loan of William B. Stein. The guaranty concludes as follows: "This guarantee shall in no way abrogate or cancel the agreement to purchase the fifty (50) shares of Market General Realty Company by Emil Stein." The offer to repurchase is in the following language: "To whom it may concern: I offer Twelve Thousand ($12,000) Dollars for Fifty (50) shares of Broad and Central Realty Company stock held by you in loan of my Brother. The bid is irrevocable during the period of the loan being unpaid. Emil Stein." The foregoing establishes a distinct offer running to the bank and the proofs show acceptance thereof by the bank. The obligation of guaranty and repurchase were obligations incurred after the pledge was given. Those obligations entitled the bank to retain the pledged securities, not only as security for the original loan and renewals thereof, but also as security for the other obligations above referred to. However, when the collateral note was canceled was it intended by the parties that the bank should retain the securities as security for the other obligation? This, we think, was a jury question.

The bank in returning the complainant's paid note may

have intended to release the right to hold the pledged stock. The fact that plaintiff did not demand his stock immediately when he paid his note is some evidence that he did not then feel that he had a right to the securities. A jury must determine the intention of the parties when the written evidences of pledge were surrendered.

The judgment under review will be reversed.